ACCEPTED
15-24-00098-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
2/28/2025 7:06 PM
CHRISTOPHER A. PRINE
CLERK

COURT OF APPEALS NO. 15-24-00098-CV

TEXAS TRIAL COURT CASE NO. D-1-GN-22-003661

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
2/28/2025 7:06:33 PM
CHRISTOPHER A. PRINE
Clerk

ARTHUR ARRIT CHAVASON, M.D.

Vs.

THE TEXAS MEDICAL BOARD

IN THE FIFTEENTH

COURT OF APPEALS

AUSTIN, TEXAS

## **REPLY BRIEF ON APPEAL FROM JUDICIAL REVIEW**

### **Cover Sheet**

Submitted by
Lee Bukstein, Attorney at Law
Texas State Bar No. 3320300
Telephone: (512) 626-0215
FAX # (512) 256-8152
612 Crystal Creek, Austin, Texas  78746

### **Oral Argument Requested by Appellant**

COURT OF APPEALS NO. 15-24-00098-CV

TEXAS TRIAL COURT CASE NO. D-1-GN-22-003661

ARTHUR ARRIT CHAVASON, M.D.                     IN THE FIFTEENTH

Vs.                                             COURT OF APPEALS

THE TEXAS MEDICAL BOARD                         AUSTIN, TEXAS

## APPEAL REPLY BRIEF

### Identity of the Parties and Counsel

Petitioner/Appellant, Arthur Arrit Chavason, M.D.

> Lee Bukstein, Attorney at Law, Texas State Bar No. 3320300
> Telephone: (512) 626-021; FAX # (512) 256-8152
>
> 612 Crystal Creek, Austin, Texas  78746

Appellee, Texas Medical Board

> Ted A. Ross, and Jeff Lutz, Assistant Attorney General
> Office of the Attorney General of Texas
> Administrative Law Division
> P. O. Box 12548, Capital Station
>
> Austin, Texas 78711-2548

### Table of Contents

| | |
|---|---|
| Statement of the Case and Distinctive Core of the Appeal | P. 1 |
| I.  Jurisdictional Deficiency | P. 5 |
| II.  Standards Applicable to Expert Testimony | P. 6 |
| III.  Applicable Law under the Medical Practice Act | P. 6 |
| IV.  Substantial Evidence Defects in Appellee Argument | |
| A.  Critical Lack of Forensic Examination (FE) Prerequisite to Support Expert Testimony | P. 7 |
| B.  Patient Eleven | P. 7 |
| C.  Patient One | P. 7 |
| D.  Patient Two | P. 8 |

E. Patient Six                                                    P. 8

F. Patient Twelve                                                 P. 8

G. Patient Seven                                                 P. 9

H. Patient Ten                                                   P. 9

I. Patient Nine                                                  P. 9

J. Peer Review Disciplinary Actions                             P. 10

K. Aggravating Factors                                          P. 10

**INDEX OF AUTHORITIES**

**Court Cases**
     *See Appellant's Initial Appeal Brief*

*Authorities   Statutes and Regulations*
     *See Appellant's Initial Appeal Brief*

**Appellant's Statement of the Case – the Jurisdictional Defects Argument Priority**

This case is an appeal for judicial review from an order of the Texas Medical Board based on a Proposal for Decision by an administrative law judge of the State Office of Administrative Hearings after a hearing on the merits. The Proposal for Decision found numerous violations of the Medical Practice Act and Medical Board rules. The Texas Medical Board confirmed all those findings and conclusions of law and revoked Appellant's Medical License based on those findings. Appellant timely filed a Motion for Rehearing and a Notice of Appeal. Judicial Review resulted in the District Court affirming the TMB Order.

Appellee describes under Procedural History, (item 3, page 13 of Appellee's Brief), the ISC notice that Appellee then infers in the rest of this section that the factual matters asserted in the Complaints at SOAH were the same factual matters covered by one of the two ISC's identified in the Complaints. This is deceptive inference, because a majority of the factual matters identified in the Complaints were not covered in any ISC notice or in the course of any ISC. On page 15, the Appellee identifies several alleged violations by bullet points. The first, regarding Patient Eleven

was dismissed by the TMB after the related ISC. None of the other bullet point allegations were ever identified in an ISC notice or in the ISC process. The bullet points of item 11, page 16, also were never identified in an ISC notice or in the ISC process. The bullet pointed matters first appeared, even if some are distantly related to Appellant's work history, in the Complaints at SOAH.

This is the core of Appellant's appeal in this case. This core was not addressed in the District Court's judicial review other than to state that is was not going to be addressed. The District Court's judicial review assumes the Appellee's false and deceptive inference about whether the ISC process was followed.

TMB makes the statement several times over that Appellant did not provide an authority for his claim of lack and failure of jurisdiction. Appellant provides the statute and related TMB rules! The jurisdictional issue is explicit. So far, no Texas court has come to grips with it by giving the statute and rules their due and providing some guidance as to describing the minimums for ISC due process. Appellant stands firm on the argument that a demonstrably inaccurate sworn pleading about ISC due process compliance does not meet the jurisdictional hurdle for a complaint to be filed at SOAH. In this case, indisputably, there was never an ISC that remotely touched the facts related to Patient Twelve, yet TMB did not alter its already false sworn statement in the Third Amended Complaint about jurisdictional ISC prerequisites being satisfied. Appellant's initial appeals brief provides in-depth identification of that demonstrable inaccuracy and lack of notice about allegations in this case previous to the Initial Complaint at SOAH.

TMB makes the statement, citing the Court's previous cases, that the TMB Final Order can be affirmed on any basis in the hearing record. This is only an accurate re-statement if TMB and SOAH have jurisdiction over a case factually and legally. The "substantial evidence" rule does not get activated unless there is competent jurisdiction first without a due process defect.

There may be no question that SOAH and the TMB had jurisdiction to discipline Appellant over matters which were properly noticed and covered in the two ISC's related to this case. Appellant's appeal is that such jurisdiction only legally exists if Appellant was provided this ISC notice and due process. At the bottom of page 17, Appellee relies on the false statement that Appellant was provided such ISC notice and due process under the rubric "peer review" when

there was never evidence about the majority of the patients in the Complaints that those patients were covered in any "peer review" process regarding Appellant. Appellee also makes the patently false statement on page 30 that **all** of the SOAH Complaint allegations regarding Patient Eleven were notice and presented at an ISC.

On page 18 of that section of Appellee's Brief, Appellee goes on to make the false statement that evidence is in the record that Appellant's hugs harmed patients, other than Patient Eleven's statements regarding sexual assault and some patients. The only harm described by other patients was being vaguely uncomfortable about either actual hugs or even just the prospect of being hugged by Appellant.

**Appellant's Review of Appellee's Appeal Brief Arguments**

I. Substantial Evidence Rule - "Second Guessing" SOAH and TMB versus the Arbitrary and Capricious Standard

Appellant, Dr. Chavason, does not disagree with the basic tenet stated by Appellee regarding the substantial evidence rule and the burden of Appellant in Judicial Review Appeals. However, the very cases cited by Appellee to support the substantial evidence standard also acknowledge that there is a guard rail for deference to fact-finders and their legal conclusions. The identifying list of those guard rails includes the standard that weighing the evidence and identifying the law cannot be arbitrary and capricious to the extent that such findings and conclusions amounts to injustice. Those guard rails include expanding authority and jurisdiction to cover facts and topics that are not within the decider's discretionary authority and jurisdiction. (Appellee at least does acknowledge these guard rails in the last paragraph on page 20 of its brief.) While Appellant believes that he has fully described and shown such violations of authority and jurisdiction within his case, he also believes that he has submitted a preponderance of the evidence to support his arguments that Appellee did not meet its burden to provide SOAH and TMB with a preponderance of the evidence in this case. Appellee now asks the honorable appellate court to perform the review for lack of jurisdiction and abuse of discretion which the District Court did not perform in its review.

## II. Standards Applicable to Expert Testimony

Appellee asserts that the "*Daubert*"[1] standard for expert testimony was followed in this case. *Daubert* has two prongs. First, whether the expert's experience has prepared them for providing helpful testimony. Appellant never challenged Appellee's expert on that grounds. The second prong is whether the expert's testimony rests on a reliable foundation and is relevant to the task at hand. All of the experts who testified, and every single bit of evidence in the record, agreed that a failure to perform a forensic evaluation performed by an expert, which is a professional psychological examination of any witness, makes all conclusions about what is going on in the minds of those witnesses erroneous, without reliable foundation and irrelevant. Appellant's expert also testified, without dispute, that such conclusions made by a professional expert without a competent forensic evaluation are professionally unethical. There is no evidence of any kind that any forensic evaluation of any witness, including of Appellant, ever took place.

## III. Applicable Law under the Medical Practice Act

Appellee asserts that "pattern" of violation allowed the reconsideration of old allegations previously dismissed by TMB. Appellant asserts that Appellee misused and abused this legal provision in this case. In addition, early in the SOAH case, the ALJ issued an order that TMB had failed to provide sufficient pleadings to provide for SOAH jurisdiction over such allegation of "pattern." Even so, TMB and SOAH ignored the lack of pattern regarding sexual assault. (Patient Eleven is the only patient involving allegations of sexual assault or even sexual activity, so this isn't a pattern by any reasonable definition.)

As set out in the Appellant's Brief, there not substantial evidence of inappropriate prescribing to oneself, family members, or others in which there is a close personal relationship[2] in this case, because there was no evidence of inappropriate prescribing to any such persons. It is unreasonable to take Dr. Ziv's written report to be such evidence when she herself admitted that she never reviewed the patient records in this case and that she was relying exclusively on the patient depositions. The clinging to this allegation and conclusion by SOAH and TMB only serves to further demonstrate the arbitrary and capricious nature of their findings and

---

1   *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. (1993); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995).
2   TMB Rule 190.8(1)(M)

conclusions.

IV. Substantial Evidence Defects in Appellee Argument

A. Critical Lack of Forensic Evaluation to Support Expert Testimony. Appellee cites Dr. Ziv's testimony as providing support for the notion that all hugging done by Appellant was harmful. Dr. Ziv admitted that such a conclusion requires cases-by-case evaluation of "therapeutic impact." It is not reasonable to jump to the conclusion that Dr. Ziv could make a reliable assessment of "therapeutic impact" if she failed to make a witness-by-witness" forensic evaluation or even a review of their medical records. The same goes for every conclusion about appropriateness or justification. If there is no forensic evaluation, along with a review of medical records, there can be no legitimate, reliable foundation for conclusions about the alleged conduct's effect on any witness/patient. Additionally, it makes no reasonable legal sense, and is highly illogical, that findings of increased potential harm to the public can be made without legitimate, reliable foundation resting on professional forensic evaluation and the medical record.

SOAH and TMB have made the decision that they can make decisions about facts and law whether conduct is inappropriate due to lack of professionalism. That is not in dispute if they have provided sufficient meaningful ISC and SOAH Complaint due process. However, neither SOAH nor TMB have the reasonable basis to make conclusions about the effect on patients or likely effect on future patients without the requisite foundation of forensic evaluation based on expert review of professionally performed forensic examination and the medical records.

B. Patient Eleven

A small example of arbitrary, capricious allegations and conclusions about issues is demonstrated by Appellee's citation of Appellant's prescribing of the drug Risperdal for Patient Eleven. Dr. Ziv, nor any other expert, ever testified about Appellant's prescription of Risperdal for any patient. The medical record, in evidence, shows that it was a mid-level practitioner, not Appellant, who originally increased the dosage from 2 mg to 3 mg. The factual evidence in the record was ignored by SOAH and TMB. Eventually, the District Court also elected ignore the factual evidence and rubber-stamped the previous arbitrary and capricious approach of SOAH and TMB towards Appellant.

C. Patient One

Appellee returns to justifying allegations and conclusions about medications prescribed by

Appellant. Dr. Ziv's written report and testimony were made without the reasonable and necessary foundation of a forensic evaluation and review of the medical records. Dr. Ziv, and the SOAH ALJ, presented conclusions about the effect of such medications on Patient One without a forensic evaluation foundation, and despite the undisputed facts that Appellant only prescribed any medications to Patient One for a few months out of her decades long obtaining these medications from other providers and illegally without any medical provider involved. Without the *Daubert*-satisfying foundation of a forensic evaluation, all conclusions about any effects of any of Appellant's conduct on any patient, including Patient One, lack sufficiency of substantial evidence.

D. Patient Two

Patient Two's own testimony contradicted all of the evidence showing any violation of any sort. Importantly, Appellee deceptively asserts that Dr. Holiner's testimony corroborated **all** events described anywhere in the Complaints filed at SOAH to avoid the inconvenient truth that Dr. Holiner's testimony and the medical and employment records contradicted many of the TMB allegations that transform conduct merely questionable or conduct violating instructions from an employer into conduct violating established professional standards or the law. There is no evidence in this case, so no substantial evidence, of conduct upon which to base any of those legal conclusions found by SOAH and the TMB.

E. Patient Six

SOAH and TMB's adoption of Board Staff Attorneys' innuendo, despite Patient Six's self-conflicting testimony and the medical records which corroborate Appellant's version of events again demonstrated that the findings and conclusions are arbitrary and capricious prejudice against Appellant.

F. Patient Twelve

Patient Twelve are the set of allegations added to the Complaints after the deadline set by the SOAH ALJ and with the undisputed fact that these allegations were never made in relation to any ISC due process. Undisputed, the findings and conclusions about what was in the mind of Patient Twelve all lack the requisite, reliable foundation of a forensic evaluation, including review of the medical records. Testimony or statements from Patient Twelve are totally absent from the trial record. The only fact established by the video is that Appellant hugged a patient

after his employer told him to stop hugging patients. There is no medical professional standard that failing to follow your employer's instructions, in and of itself, is a violation of any law or TMB rule. This is insufficient to base a finding and conclusion of violation of any law or rule set out by SOAH and TMB.

G. Patient Seven

The only evidence to support the SOAH and TMB findings and conclusions about Patient Seven was her self-contradictory testimony that Appellant maybe said something vaguely sexually flirtatious or objectionable. What is crucially missing is any evidence that this alleged conduct in any way interfered with or potentially interfered with or impacted Patient Seven's care. The record supports that including these findings and conclusions was part of an arbitrary and capricious orientation toward Appellant based on prejudice and bias, including a systematic attack by TMB staff attorneys "woodshedding" witnesses. While an essentially judicial administrative process gets deference in judicial review, crossing this line justifies overturning results that were defectively supported and inequitable. When such prejudice and bias is in place from the initiation of such process, it becomes impossible to ascertain which, if any, findings and conclusions are not tainted by such prejudice and bias.

H. Patient Ten

Again, the findings and conclusions that Patient Ten was harmed when her own testimony and the medical record demonstrate that she was not harmed, other than subjectively feeling uncomfortable. Thus, the foundation of SOAH's and TMB's prejudice and bias led to an arbitrary and capricious result.

I. Patient Nine

Appellant never disputed that he hugged Patient Nine after his employer instructed him to stop hugging patients, even though he did not recollect exactly the manner of his hugs with the accuracy allowed by benefit of reviewing the video. The videos, although clearly edited during or after transfer of those videos to the TMB to avoid any conflict with Patient Nine's statements, support the line of facts that were directly connected with Appellant's termination of work for the employer. However, TMB's expert's conclusions are defective, because she testified that Patient Nine was harmed, even though the experts in this case all testified that only a forensic evaluation based on competent forensic examination in the absence of harm documented in the

medical records. The inclusion of the unsupported allegation of Appellant involving an erection with a hug is presented in order to bolster the case, but it only serves to signify the great degree of prejudice and bias leading to arbitrary and capricious decision making which transformed the unclear videos of Patient Nine into an allegation of sexual assault.

J. Peer Review and Disciplinary Action

The evidence in the record is clear that the only **peer review** discipline against Appellant was his termination at MCGO due to his conduct hugging Patient Nine. All of the other actions of organizations in this case that fit the TMB definition of organizations that conduct "peer review" were non-disciplinary. SOAH and TMB apply "peer review" to all of Appellant's conduct and organization actions in this case as an attempt to pile on in order to justify the most extreme outcome for this case. It was part and parcel of their prejudice and bias to reach these arbitrary and capricious extremes instead of being satisfied with what the evidence actually proved

K. Aggravating Factors

Under the rubric of "Aggravating Factors", the TMB and SOAH expanded the reach of this case beyond legal jurisdiction and authority. They took Appellant to task for failure to respond to "remedial education" when the content of such "remedial education" actually provided to Appellant was not admitted into evidence. Additionally, TMB and SOAH found that Appellant had engaged in certain categories of conduct after being warned when the record does not provide evidence admitted into the record of Appellant's subsequent conduct after a warning with the exception of the conduct of hugging. TMB and SOAH even include such conclusions that conduct, such as locking a door, making phone calls to patients or texting patients or accommodating patients with appointments at certain times in the schedule and other conduct identified as merely "problematic," is by itself professional misconduct without any evidence to support such a conclusion. TMB and SOAH engage in this expansion in order to reach the conclusion that Appellant actually harmed any patients in this case or would likely harm patients in the future. Again, the arbitrary and capricious decisions spring from their prejudice and bias, not from the facts.

TMB and SOAH push even harder with their prejudice and bias to reach legal authority and jurisdiction over relationships between licensees and employees, subordinates or co-workers.

This legal authority and jurisdiction does not exist except to the extent that identified conduct reasonably interferes with patient care. No evidence of such interference or adverse impact stemming from Appellant's conduct toward co-workers was ever provided or admitted in this case, including any evidence regarding warnings and remedial education.

TMB and SOAH found harm and severe harm in Appellant's care of patients in the case. Other than the dubious testimony of Patient Eleven, not even a smidgen of evidence supported such a finding and conclusion. The definitive piece that is indisputably totally missing in this case is evidence from any competent forensic evaluation of anybody.

TMB and SOAH joined together, based on only prejudice and bias, in the finding that Appellant lied about everything, and, therefore, should be punished for attempted concealment. Even Appellant's response to his employer's questions about his conduct with Patient Nine elicited an admission that was only at fault for being inaccurate.

Appellant's Request to the Court of Appeals

Appellant requests that the Court vacate the order of the Texas Medical Board (TMB) and the District Court of Travis County, Texas, related to TEXAS STATE OFFICE OF ADMINISTRATIVE HEARINGS (SOAH) DOCKET NO. 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.MD, TEXAS MEDICAL LICENSE M-7104, and remand this case for proceedings before TMB and SOAH consistent with due process and matters adequately noticed to Appellant through the ISC due process so that a hearing can be a do-over to escape the taint of prejudice and bias. Appellant further requests that all other findings and matters included in the District Court Order in this cause, the TMB Order and the Administrative Law Judge's Proposal for Decision be vacated and struck from this case due to TMB's failure to meet due process requirements, lack of jurisdiction and inadequate support in the evidence.

Appellant further requests that the Court award Appellant with Attorney Fees for work performed on this case and expenses incurred pursuant to Tex. Civ. Prac. & Rem. Code Sec. 105.005 and/or Tex. Gov't Code Sec. 2001.903 through February 2025; and all other relief to which Appellant is entitled.

Respectfully submitted,

By: _Lee Bukstein_

Lee Bukstein, Attorney at Law
Texas State Bar No. 3320300
Telephone: (512) 626-0215
FAX # (512) 256-8152
612 Crystal Creek, Austin, Texas  78746
buksteinlegalservices@gmail.com


## CERTIFICATE OF COMPLIANCE – WORD COUNT

This document complies with Texas Rules of Appellate Procedure 9.4 word limits.  I certify that the total word count of this Appeal Reply Brief is 4,551, below the limit of 7,500 words.

_Lee Bukstein_


## CERTIFICATE OF SERVICE

I certify that on February 28, 2025, a true and correct copy of the foregoing Appeal Reply Brief has been served as follows:

**VIA ELECTRONIC SUBMISSION through efiletexas.gov by** buksteinlegalservices@gmail.com**:**
Clerk of the 15th Court of Appeals
P. O. Box 12852
Austin, Texas  78711

Clerk of 126th District Court, Travis County, Texas
P. O. Box 1748
Austin, Texas 78767

Ted A. Ross, and Jeff Lutz, Assistant Attorney General
Office of the Attorney General of Texas
Administrative Law Division
P. O. Box 12548, Capital Station
Austin, Texas 78711-2548
ted.ross@oag.texas.gov

_Lee Bukstein_

Lee Bukstein

**Automated Certificate of eService**
This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lee Bukstein on behalf of Lee Bukstein
Bar No. 3320300
buksteinlegalservices@gmail.com
Envelope ID: 97951616
Filing Code Description: Other Brief
Filing Description: Appellant's Reply Brief
Status as of 3/3/2025 7:03 AM CST

Associated Case Party: ArthurArritChavason

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lee Bukstein | | buksteinlegalservices@gmail.com | 2/28/2025 7:06:33 PM | SENT |

Associated Case Party: Texas Medical Board

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jeff Lutz | | jeff.lutz@oag.texas.gov | 2/28/2025 7:06:33 PM | SENT |
| Ted A.Ross | | ted.ross@oag.texas.gov | 2/28/2025 7:06:33 PM | SENT |